274

## SEEFRED v RENNER BREWING CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 8, 1936

H. P. McCoy, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

### OPINION

By ROBERTS, J.

This action originated in the Municipal Court of the City of Youngstown, where a judgment was rendered in favor of the defendant in error. The parties now occupy the same positions in this court as in the lower courts. Appeal was made to the Court of Common Pleas from the Munici-

pal Court, where the issues were submitted, and at the conclusion of the evidence offered by the plaintiff motion was made for a directed verdict in favor of the defendant, which motion was sustained and the court so directed the jury to return a verdict for the defendant, and judgment was entered for the defendant on the verdict so rendered. Error has been prosecuted to this court by the plaintiff, alleging first that the court erred in sustaining said motion for a directed verdict for the defendant, and second, that the court erred in overruling a motion for a new trial in said case. If the court was correct in sustaining the motion for a directed verdict, it follows that it would not be erroneous to overrule the motion for a new trial.

The plaintiff, in his statement of claim, filed in the Municipal Court, alleged that defendant company employed him to do plumbing work and furnish materials for said work at 2610 Market Street; that his statement of materials furnished and work done is attached hereto and made a part hereof as set out in its entirety herein; that the last of said materials were furnished and the last of said work done on January 15th, 1934, and that there is a balance due him for said work and materials of $556.91, no part of which has been paid. Plaintiff further says that the defendant has refused and does refuse to pay same, wherefore he prays judgment against defendant for said sum, with interest.

Attached to the statement of claim is what purports to be an itemized statement of the items of material and labor so claimed to have been furnished by the plaintiff to the defendant and which shows, in the aggregate, $339.91 for material, and $310.00 for labor, and $7.00 for plumbing permits, making a total of $556.91.

As its statement of defense the defendant Brewing Company alleged that the statement of claim heretofore filed by the plaintiff is denied by the defendant; the Renner Brewing Company denies that said company employed the plaintiff to do plumbing work and furnish materials; denies that the last of said materials were furnished and the last of said work done January 15, 1934; denies that there is a balance due plaintiff for said work and materials of $556.91, and also denies each and every other allegation set forth in the plaintiff's statement of claim.

Thus the issues were made up in the Municipal Court and the cause tried, resulting in a judgment for the defendant. Motion for new trial was filed and overruled. Appeal was made to the Court of

Common Pleas, where at the conclusion of plaintiff's evidence the court sustained a motion for a directed verdict in favor of the defendant. Such verdict having been returned, judgment was rendered thereon by the Court of Common Pleas, and error has been prosecuted to this court.

The cause has been submitted in several courts upon the same pleadings and the same issues. The proposition now for determination by this court is did the Court of Common Pleas commit error in directing the jury to return a verdict in favor of the defendant. This the court ▆▆▆▆▆ ▆ would not be authorized to do except in the absence of any evidence upon a proposition essential to the cause of the plaintiff.

The services and labor claimed to have been rendered and performed in this action were devoted to the plumbing work installed in the building designated as Royal Castles, operated by one Nick Opritza, and was intended, in part, at least, for the sale of beer, a commodity in which the defendant company did a wholesale business. The plaintiff testified that he was engaged in the plumbing business; that he lived at 1023 Oak Street, and he had been in this business for about 28 years, and primarily states that he was employed late in 1933 to do work for the Renner Brewing Company. It may now be stated that it is denied that he was so employed by the defendant, and the plaintiff does not claim that he was directly employed by the Renner Brewing Company, but claim that his employment was by one Edward F. Dixon, who says that at the time involved in this transaction he was general salesman for the Brewing Company. Previous to the work and material in dispute in this action the plaintiff had done work for Opritza, amounting to $278.00, but before so performing and furnishing, being apprehensive as to whether he would be able to get his pay from Opritza, he interviewed Emil Renner, the president and general manager of the defendant company, with regard to the advisability of doing this work for Opritza. Mr. Renner states that after making some inquiry with regard to the nature of the matter involved, he guaranteed the bill for Mr. Seefred in the sum of, he says, either $273.00 or $278.00. This bill was subsequently paid by Edward F. Dixon, the salesman, he giving his individual check therefor in the sum of $120.00, and leaving $150.00 with Mr. Opritza for the plaintiff, which was paid to him by Opritza. Thus the original transaction was closed, but the plaintiff continued to work on this Opritza property until he had performed work and furnished material as claimed in the statement of claim in this case, and for the recovery of which this action was brought against the defendant.

The plaintiff says in his testimony, record page 16:

"A. I done plumbing that was ordered by Mr. Ed Dixon at 2610 Market Street."

Record page 17:
"A. Mr. Dixon called me up and had me come out.
* * *
He had me come out to this place on Market Street and disconnect some radiators that was in the way of the carpenters there.
Q. Had you had any dealings with Mr. Dixon before this?
A. No.
Q. You say he called you up?
A. Yes sir.
Q. Where did you meet Mr. Dixon?
A. I went over to the Renner Brewing Company's plant after he had telephoned me and we had a conversation over there in regards to the work and he wanted an estimate on some toilet rooms. I gave it to him. He gave me the contract. While we were working there, there was extras that would come up that he had me do and he had me connect up the beer, connect up the kitchen, change a lot of radiators around, and I believe that covers all."

This is the evidence of the plaintiff regarding his employment, which is alleged to have been with Dixon, the general salesman of the defendant. Mr. Dixon testified, commencing on page 6 of the record:
"Q. Do you do anything besides selling?
A. That is all.
Q. You contact your customers?
A. Yes, sir.
Q. Do you make bargains of any kind with people who handle Renner products?
(Question not answered).
Q. You are sales manager, are you?
A. General salesman.
Q. You are not the sales manager?
A. No sir.
Q. Do you ever do any other work besides selling for Renner?
A. No sir.
Q. You do not? All right, do you have any relations with people in a managing or fiduciary relation with people for Renner?
A. No sir.
Q. Did you ever talk to Mr. George See-

fred about plumbing for the Renner Brewing Company?

A. Not for the Renner Brewing Company.

Q. Did you ever talk to him about doing plumbing for anybody?

A. In 1932 I talked to him on the first estimate he had at that place.

Q. What place?

A. At the Royal Castle on Market Street.

Q. For whom were you acting in that conversation with Mr. Seefred?

A. For Mr. Opritza."

There is other evidence to the effect that Dixon was sometimes called upon, by reason of his knowledge and experience, to advise with customers who purchased the defendant's product as to the arrangement and fitting up of the fixtures in their respective establishments; that this was done with the idea that it tended to promote the purchase of beer from his employer, the Renner Brewing Company.

It further appears, on page 8 of the record:

"Q. Did you tell Mr. Seefred you were acting for Mr. Opritza?

A. I don't think I told Mr. Seefred I was acting for anybody. I couldn't act for anybody else."

There is considerable more testimony along this line by Mr. Dixon, to the effect that whatever he said to Mr. Seefred, that whatever interest it took in the fitting up of Opritza's place, was for Opritza and not at any time did he act for in this connection or represent the Renner Brewing Company.

Emil Renner, the president and business manager of the defendant company, in addition to what has hereinbefore been stated with regard to this being the original bill in the sum of $273.00 or $278.00, testified at considerable length concerning Mr. Dixon's duties and authority, but to the effect that he was not authorized to represent or bind the company outside the scope of his employment to sell its products, but that he did sometimes give advice, as before stated, gratuitously as an adjunct to the business, tending to promote sales.

On page 31 Mr. Renner testified as follows:

"Q. He (Dixon) did not have any interest authorized by you?

A. No sir.

Q. You don't know whether or not Mr. Dixon guaranteed any bills for the purchase of supplies and equipment out there?

A. I guaranteed the bill for Mr. Seefred."

The witness then goes on to state his guaranteeing the original bill of two hundred and seventy some odd dollars, and that that was all he knew about the transaction.

The situation seems to be, attempting to state it briefly, that Mr. Seefred performed this work and furnished the material in the building known as Royal Castles, operated by Mr. Opritza. He claims to have furnished material and labor, for which he sues, by an arrangement or agreement with Mr. Dixon, the general salesman of the defendant company. Dixon denies that in negotiating with Mr. Seefred that he represented the Renner Company, denies that he had any authority to represent it and that he was acting for Mr. Opritza in soliciting the services of the plaintiff. Plaintiff does not claim that he had any contact or contract or conversation with anyone representing the company otherwise than Mr. Dixon. Mr. Renner, the president, denies that his company in any way became obligated for this account or had knowledge concerning its incurring. The trial court, in directing the verdict for the defendant, was of the opinion that a cause of action had not been shown against the defendant company, and in this the Court of Appeals concurs with the Common Pleas Court, being of the opinion there is an absence of testimony showing any obligation entered into or incurred on the part of the defendant to pay for the labor performed or the materials furnished at the Royal Castles.

The defendant can not be held liable unless it has in some way obligated itself or permitted such representation by someone for it as would constitute an obligation or duty on the part of the defendant. The testimony of Mr. Dixon is not contradicted. Neither is that of Mr. Renner upon the proposition that Mr. Dixon was not authorized to bind the defendant in this manner, and Mr. Renner and Mr. Dixon further testify that neither one of them did employ the plaintiff or assume any responsibility, personal, representative or otherwise, for the services sued upon.

Under the situation presented we think that a cause of action was not shown, and the verdict was properly directed. The

judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

CARTER and NICHOLS, JJ, concur.